## JOHN K. NICHOLS *vs.* GEORGE W. COOPER.

### July Term, 1867.

1. The principle upon which equity gives relief in cases of excess and deficiency in the estimated quantity upon the sale of lands, is where there is a mistake; whether the mutual mistake of the parties, or the mistake of one of them, occasioned by the fraud or culpable negligence of the other

2. The general rule is that an estimate of the quantity by the parties, whether in a contract executed or a contract executory, ought to be taken *prima facie* to have influenced the price.

3. In a case of mere deficiency in the quantity, the general rule of compensation is according to the average value of the whole tract, but where there are particular circumstances requiring a departure from the rule, it must be in conformity to the facts of the case.

4. Therefore as an estimated quantity ought to be taken *prima facie* to have influenced the price, so also an estimate of the respective quantities of the respective parts, and their respective values must be taken *prima facie* to have influenced the average of the whole.

5. C. sold to N. a certain tract of land, reciting certain boundaries, estimated to contain two hundred acres, for twenty-two dollars per acre, forty acres whereof were represented to be bottom land; a survey was to be made soon thereafter. N. took possession and made sundry payments. Upon survey it was ascertained that there were two hundred and ninety-three acres within the boundaries recited, only twenty-nine acres, however, were bottom lands, leaving a deficiency of eleven of that quality worth ninety dollars per acre, and making an excess of one hundred and four acres of hill land, worth five dollars per acre. HELD:

> That N. was entitled to a deduction of the difference between the actual amount of bottom land and the amount represented, *i. e.,* eleven acres, at ninety dollars per acre, and the amount of excess, one hundred and four acres, at five dollars per acre.

*George W. Cooper* filed his bill in the circuit court of *Mason* county, in August, 1860, against *John K. Nichols*, asking for a specific performance of a contract. He alleged the sale of a certain tract of land in *Mason* county to the defendant, estimated to contain two hundred acres, but

*See page 187.

which upon actual survey contained two hundred and ninety-three acres, at the price of twenty-two dollars per acre. He admitted certain payments made by the defendant at sundry times. He claimed that the contract was evidenced by a certain writing which he filed with the bill, and asked a decree for the sale of the land to satisfy the purchase money unpaid, and also for the excess of the land over the estimated quantity at the contract price of twenty-two dollars per acre.

The defendant answered denying that the writing filed with the bill was the contract between them, but that it had been prepared for the complainant, but had never been accepted by him as the agreement between them. That he had by verbal contract purchased in March, 1858, from complainant, certain boundaries of land supposed to contain two hundred acres, forty acres of which the complainant had represented to be Ohio bottom land, and the balance hill land; and it was with the distinct understanding that forty acres of the same was bottom land that defendant had agreed to give twenty-two dollars per acre for the whole tract. That defendant took possession of the land at the time of the purchase, and that the land was to be surveyed shortly after that time, when the complainant was to make a title bond for the land, and was to make a general warranty deed on the first day of April, 1860. That all the writing evidencing the contract was a receipt for one hundred dollars paid by defendant to complainant on the 8th day of April, 1858, which recited that defendant had purchased a tract of two hundred acres of land of the complainant, according to certain boundaries which were recited, at twenty-two dollars per acre, including a growing crop of wheat. This receipt he filed with his answer.

The defendant further answered that he was solemnly assured by the complainant that the boundaries described in the receipt contained forty acres of bottom land, and that it was this assurance that induced the defendant to give so large a sum per acre, as the hill land was not worth over five dollars per acre.

Upon actual survey it appeared that the boundaries recited in the receipt above mentioned, contained two hundred and ninety-three acres, of which only twenty-eight acres three roods and thirty-two poles were bottom land; showing a deficiency, according to the claim of the defendant, of, in round numbers, eleven acres of bottom land, and an excess of hill land of one hundred and four acres; the former quality was proven to be worth ninety dollars per acre, and the latter five dollars per acre.

The court below decreed the specific performance of the contract as claimed by the complainant, and required the defendant to pay the contract price of twenty-two dollars per acre for the excess over the estimated quantity.

The defendant appealed to this court.

*B. H. Smith* for the appellee.

BROWN, President.

This was a bill to enforce specific performance of a contract for the purchase of land. The land is described in a receipt given by the vendor to the vendee at the date of the contract, for part of the purchase money, the price per acre, viz: twenty-two dollars, and the quantity, viz: two hundred acres more or less, are also stated in the same paper. The evidence in the case also shows that the tract is made up of two distinctive parcels, viz: the bottom land, with the growing crop of wheat on it, and the hill land in forest. These two parcels are shown to be of widely different values. The former was represented by the vendor and understood by the purchaser to contain about forty acres, and the latter the complement of two hundred acres. The price agreed per acre was clearly a compound of the two values and the relative quantities. The value of the hill land according to the weight of testimony in the cause, was five dollars per acre, and the bottom land and the growing crop of wheat on it, ninety dollars per acre. Upon actual survey made in the cause the whole quantity is found to be two hundred and ninety-three acres, of which only twenty-eight acres three roods and thirty-two poles, in round numbers say

twenty-nine acres, were bottom, and the residue, viz: two hundred and sixty-four acres, were hill land. Thus making a deficiency of eleven acres of bottom land and growing crop of wheat, and an excess of hill land of one hundred and four acres. The decree complained of adopts the contract price of twenty-two dollars per acre for the excess over the estimated quantity, and the question is, is that the correct rule to apply in this case?

In the case of *Blessing* vs. *Beatty*, 1 Rob., 287, judge Baldwin delivering the opinion of the court, said: "The principle upon which equity gives relief in cases of deficiency or excess in the estimated quantity upon the sale of lands, I understand to be that of mistake; whether the mutual mistake of the parties, or the mistake of one of them occasioned by the fraud or culpable neglect of the other. If the parties, relying too much upon the estimated quantity, go on to adjust the consideration by that criterion, and it turns out that the estimate is erroneous, the mistake is undoubtedly one which must be corrected." That such cases require relief in equity is well established by that case and the authorities there cited. The learned judge continues: "In the absence of all direct evidence, the safest general rule, I think is, that an estimate of the quantity by the parties, whether in a contract executed or a contract executory, ought to be taken *prima facie* to have influenced the price, for quantity is usually an important element of the agreement and can hardly be supposed to have been disregarded by the parties, or to have been unmeaningly stated by them in a solemn contract."

In case of a mere deficiency in the quantity, the general rule of compensation is according to the average value of the whole tract; but where there are, as in the present case, particular circumstances requiring a departure from that rule, it must be done in conformity to the facts of the case. And as has been said, "an estimate of the quantity by the parties ought to be taken *prima facie* to have influenced the price," so also an estimate of the respective quantities of the respective parts and their respective values must be ta-

ken *prima facie* to have influenced the average price of the whole. Indeed, nothing could be clearer than the propriety and necessity for such modification of the general rule in its application to a case like the one under consideration. To require a purchaser to lose half his bottom land and growing crop of wheat, worth ninety dollars per acre, and have to take an excess of double the quantity of hill land in forest, worth only five dollars per acre, and pay for it the same price of the estimated quantities, would be to sacrifice fact to fiction and practical experience to theory.

I think, therefore, that the decree of the circuit court should be reversed, with costs in this court to the appellant; and the cause should be remanded to the circuit court of Mason county, to be further proceeded in, with instructions to compel the specific execution of the contract, with compensation for the deficiency and excess in the quantities of said parcels of the land respectively. That is to say, the said vendor Cooper, is to be required to convey to the said purchaser Nichols, the land embraced in the said receipt, (exhibit A), and described and bounded in the report of surveyor Pullen, as follows, viz: "Beginning at the military corner on the Ohio river bank, thence down the river bank N. 40° E., 60½ poles to a cross fence; thence N. 39° 30' E., passing a corner made by J. J. Polsley in his survey of Nichols' land at 48 poles, 52 poles and 4 links to a stake, where the hickory stake mentioned in the said receipt formerly stood; thence leaving the river N. 56, W. 79 poles to a white-oak stump shown by G. W. Cooper as the stump of the white-oak mentioned in the receipt; thence S. 81 W. 57 poles to a stake inside of Mrs. Nace's field; thence S. 20 poles to a white-oak military corner, and thence with military line S. 87° 30 E. 569 poles to the place of beginning— containing 293 acres." Cooper's said deed to contain a covenant of general warranty, with his wife's relinquishment of dower to be properly acknowledged for record, and stamped and filed in the cause, of which the said Nichols to have notice. And said vendee Nichols to be required to pay to the vendor Cooper, within thirty days after the filing

of such deed and notice thereof, the purchase money of said land, viz: the sum of four thousand four hundred dollars, that being the amount of two hundred acres at the contract price of twenty-two dollars per acre, with interest thereon from the first day of April, 1858, till paid, subject however, as of the said first day of April, 1858, to a credit of four hundred and seventy dollars, that being the amount of the difference between the values of the deficiency in the bottom land and growing wheat crop, and the value of the excess of hill land. And also subject to the further credits of moneys paid by the purchaser to the vendor upon the said land, as follows, to wit: one hundred dollars paid March 24th, 1858; one thousand dollars paid April 22d, 1858; four hundred dollars paid July 15th, 1858; three hundred and twenty-five dollars and 12½ cents paid July 15th, 1859; seven hundred and five dollars paid July 15th, 1859; and thirty dollars paid September 5th, 1859. And that the said J. K. Nichols be further decreed to refund to the said G. W. Cooper the amount of any taxes paid by the latter for the former on said land since he become the purchaser in possession thereof. And that upon the failure of the said J. K. Nichols to pay the said moneys as required, that a commissioner be appointed to sell the land, upon the usual terms, for that purpose. But since the said G. W. Cooper has tendered to the purchaser Nichols, no such deed as above required, as he should have done, and the said purchaser Nichols was not bound to pay the balance of the said purchase money without receiving such deed, nor until the just and equitable compensation for the said deficiency and excess respectively, was adjusted and allowed by the said Cooper, the latter is not entitled to a decree for his costs against the said Nichols in the court below.

Judge Maxwell concurred.

DECREE REVERSED.