# CHARLESTON.

FISHACK *v.* BALL.

Submitted January 21, 1891.—Decided January 31, 1891.

1. SPECIFIC PERFORMANCE—MISTAKE.

Either party to a written contract for the sale or exchange of lands may have the same specifically enforced in a court of equity with such corrections in it, as parol proof may show to be necessary in order to correct a mistake made in reducing the contract to writing.

2. SPECIFIC PERFORMANCE—MISTAKE.

Before such correction and enforcement can be made, the proof must be strong, clear and preponderating, and, in the absence of fraud, must prove that the mistake was mutual.

3. SPECIFIC PERFORMANCE—IMPROVEMENTS.

Equity follows the law, and, as a general rule, where the court of chancery is adjusting the mutual rights between the occupier of land, who has made improvements under the belief that he

had a just claim, and the real owner of the land, it will adopt the rule which the Code prescribes in actions of ejectment, and will estimate against the occupant the annual value of such part of the premises, if any, as was improved and in a state fit and prepared for cultivation at the time he took possession thereof, and will credit him with the value of all improvements made thereon; but will not charge him for the use of any improvements made upon the land by him, or for the use of any part of the land cleared by him.

*J. W. Davis* and *J. H. Holt* for appellant cited 3 Mon. 257; 4 Bibb 1; 3 H. & M. 288; 2 Munf. 357; Prestons *v.* McCaul, 7 Gratt.; 29 W. Va. 258; 3 Bibb. 15.

*W. W. Adams* for appellee cited 1 Greenl. Ev. (Ed. 1883) § 284a.; 89 Pa. St. 134; 6 W. Va. 24; 19 W. Va. 240; 20 W. Va. 398; 3 Rand. 537; 2 Gratt. 266; 30 W. Va. 266–269; Sto. Eq. Pl. §§ 530, 531, 533; 11 W. Va. 455; 5 W. Va. 168; 3 W. Va. 536; 30 W. Va. 146; 12 W. Va. 213; 29 W. Va. 258; 76 Va. 19.

LUCAS, PRESIDENT:

This was a suit for specific performance, brought by the plaintiff against the defendant in the Circuit Court of Summers county, W. Va., to January rules, 1886.

The bill charges that in the year 1885 the plaintiff, through his agent, R. H. Maxwell, made an agreement with the defendant for the exchange of certain real estate, said agreement being a verbal and unwritten one. By its terms the plaintiff, Fishack, was to convey to the defendant, Ball, a tract of land in Raleigh county containing four hundred and twenty acres, and was also to deliver up to defendant defendant's note for three hundred and forty nine dollars, which sum was the consideration for a certain vacant lot in the town of Upper Hinton, and was secured by deed of trust on said vacant lot. In consideration of these engagements to be performed by the plaintiff, the defendant agreed to convey to plaintiff, with general warranty, a house and lot in Upper Hinton, and also the said vacant lot adjoining thereto, mentioned above, and also a tract of land on the opposite side of New river, containing seventy acres, and also to deliver to the plaintiff a lot of lumber situated on said vacant lot. The plaintiff further alleges

that, he on his part had the Raleigh tract of four hundred and twenty acres conveyed to the defendant, and also tendered to him said note of three hundred and forty nine dollars, above spoken of, and the defendant on his part had conveyed to the plaintiff the seventy acre tract and the house and lot in Upper Hinton, but positively refused and declined to convey the said vacant lot, or to accept the tender of the said note for three hundred and forty nine dollars. The bill further alleges that plaintiff received possession of said vacant lot, and proceeded, with the knowledge of the defendant, to erect a valuable building thereon, at the cost of about four hundred dollars, and that plaintiff has contracted to sell the said vacant lot with the building thereon; that the defendant knew of the building of said house, and did not attempt to prevent it, and never denied the plaintiff's right to build said house until it was nearly or quite completed.

The prayer of the bill is that said parol contract of exchange be fully and specifically enforced by the Court, and that a conveyance of said vacant lot be decreed to the plaintiff; or, if specific performance be refused by the Court, that the plaintiff be then placed in every respect *in statu quo*, he was before said agreement, and that the contract be rescinded, and the cost of said building, improvements *etc.*, be paid to him, or that he may have a decree for the value of the said house built on said vacant lot, and the said sum of three hundred and forty nine dollars, with interest from the 17th day of March, 1886, and that said house and lot be subjected to the payment thereof under the trust-deed executed by said Ball to secure them, and for further and general relief.

To this bill the defendant, Ball, filed his answer, in which he denies positively that there was any verbal exchange of lands by parol, as set out in the bill, or that the plaintiff ever took possession of said vacant lot with the consent of the defendant. On the contrary, defendant alleges, the agreement was reduced to writing by the direction and under the instruction of the agent of the plaintiff, and said agreement was presented to defendant, and he was asked to sign it, which at the request of plaintiff's agent he did, and

left it with said agent to have plaintiff sign it, and said contract remains with the plaintiff or his agent. The defendant further denies that the improvements were put on said lot with his approbation or consent, and avers that he resisted said improvements as well as he could, and that they were put there in defiance of his resistance. Defendant also denies, in conclusion, that he ever sold the lumber on said vacant lot to the plaintiff, or that plaintiff ever acquired any title to the same.

Subsequently the respondent, Ball, filed an amended answer, in which he set out that the plaintiff had not only accepted a deed for the seventy six acres of land across New river, but had subsequently conveyed the same by deed to a third party. He denies, moreover, the tendering to him of the note for three hundred and forty nine dollars. He further files as an exhibit a written contract of exchange between the parties, as signed by him, and denies that any fraud or mistake occurred in reducing the same to writing.

In addition to the above pleadings, R. H. Maxwell filed a petition as trustee in the deed of trust securing the note of three hundred and forty nine dollars, asking that the trust be enforced, and the vacant lot be subjected to the discharge of this unpaid purchase-money. To this petition Ball responded, and denied that he owed the said purchase-note or bond, but says that the same has been extinguished by reason of the fact that the plaintiff, Fishack, has taken possession of said lot, and rented it out at the rate of twelve dollars per month for forty eight months, making five hundred and seventy six dollars; that he had also taken possession of a lot of lumber on said lot belonging to defendant; and defendant claims the aggregate of these two sums as a set-off against said purchase-note or bond.

The Circuit Court referred the cause to a commissioner; and a large amount of testimony was taken on each side. On May 16, 1889, the Circuit Court entered a final decree, in which the court decided that the plaintiff was not entitled to specific execution of the verbal contract as to the vacant lot referred to in the bill, but inasmuch as it appeared that the plaintiff had placed valuable and permanent improvements on said lot, with the knowledge and consent of

said Ball, to the value of four hundred dollars, and inasmuch as the unpaid purchase-money now amounted to four hundred twenty dollars and ninety three cents, it was therefore adjudged that the plaintiff should recover four hundred dollars from the said Ball, the same being an equitable charge on said lot, and also the said sum of four hundred twenty dollars and ninety three cents, unpaid purchase-money. From these two sums, however, there was to be deducted the sum of sixty five dollars as the value of the lumber which Ball had left on said lot, and of which Fishack through his agents took possession. The reports of the master commissioner were confirmed in so far only as they were consistent with this decree, and special commissioners were appointed to sell the lot in question, in order to pay the liens thus ascertained. There was also to be deducted in favor of Ball from the debts which he owed on the lot the sum of twenty dollars and sixty six cents, as the total rental value of said lot, exclusive of the improvements thereon, while it was occupied by the plaintiff or his vendee.

From this decree Ball, the defendant, has appealed to this Court, and Fishack has also assigned as error the failure of the court to correct the contract and award him specific performance.

Let us first consider the assignment of the appellee that the court erred in not awarding him specific performance. It is quite obvious that the Circuit Court concluded from the testimony that there was in fact a written contract signed by Ball, and, though not signed by Fishack, it had been by him fully executed. Moreover, it seems to have been drawn in the absence of Ball by the clerk of the County Court, in the presence of Fishack's agents, and delivered to them, or at least came into their possession, and they procured the signature of Ball, and their principal confirmed and ratified the contract by executing it precisely in the terms in which it was written. The Circuit Court doubtless considered that the proper remedy of the plaintiff was not by specific performance of the supposed parol agreement as to the vacant lot, as an independent contract, but considered that the plaintiff's remedy, upon his own

statement of the case, was to proceed on the ground of a mistake in reducing the contract to writing, and that his alternative prayer to correct the written contract, and then have it specifically enforced, was the proper prayer applicable to his case from his own standpoint. The jurisdiction of a court of equity to correct a mistake in reducing a contract to writing, and then to enforce it as thus corrected, is undoubted, and parol evidence is admissible to prove such mistake. See authorities cited in *Deitz* v. *Insurance Co.*, 33 W. Va. 541 (11 S. E. Rep. 50) also *Nichols* v. *Cooper*, 2 W. Va. 347.

In *Allen* v. *Yeater*, 17 W. Va. 128, it is said : " Parol evidence is admissible to prove such mistake, though it is denied in the answer, but the evidence to show such mistake in a written instrument must be clear and strong, so as to establish it to the entire satisfaction of the court."

In *Creigh's Adm'r* v. *Boggs*, 19 W. Va. 240, it was held : " Either party to a written contract for the sale of land may have the same specifically enforced in a court of equity, with such corrections in it as parol proof may show to be necessary to correct a mistake made in reducing the contract to writing." See, also, *Campbell* v. *Fetterman*, 20 W. Va. 398.

Moreover, to correct a contract on the ground of mistake alone, the mistake must be mutual; that is, participated in by both parties. 2 Pom. Eq. Jur. § 859. I know this language has been criticised, but when properly understood it does not seem objectionable. If in a contract between A. and B. the full intention of A. is embodied, while that of B. has been mutilated, or in part omitted, it would obviously be unjust to A. to alter the contract, under pretence of correcting a mistake, and, thus altered, to enforce it against him.

In the present case the Circuit Court, as a question of fact, did not consider the proofs sufficiently strong, clear and preponderating to justify the alteration of the contract and its enforcement, when thus altered, against Ball. We are not prepared to say that the Circuit Court erred in determining this question of fact, but, on the contrary, we think its conclusion was justified by the evidence, and we must decline to interfere with it.

. We come now to consider the assignments of error made by the appellant. In his first answer he denies that there was any contract whatever with reference to the vacant lot, and strenuously insists that the writing which he signed embraced all the terms agreed upon for an exchange of lands. When, however, the trustee filed his petition upon this theory, which the defendant had admitted to be correct, viz: that Ball still owned the lot, and for the enforcement of the trust for the unpaid purchase-money, the defendant, Ball, shifts his position, and claims that the purchase-money, viz., the note for three hundred and forty nine dollars, should be regarded as discharged by the rent which the plaintiff had received from his own house, which Ball had permitted him to erect upon the vacant lot without any protest or resistance until the house was nearly or quite completed. · The inconsistency of this position is too apparent for further comment. The Circuit Court rejected such a pretension, and decreed that Ball should pay for the lot the price he had agreed to pay, and should likewise pay for the improvement put there by the plaintiff, and should be allowed ground-rent as owner during the time plaintiff had occupied the lot. In default of such payment by Ball, the deed of trust he had given for the purchase-money was to be enforced. In thus settling the rights of the parties, the court simply took Ball at his word, and we do not see what right he has to complain, unless there was error in adjusting the question of improvements and rents, or use and occupation.

The thirty second and thirty third sections of the ninetieth chapter of the Code on ejectment provides : "If the defendant intends to claim allowance for improvements made upon the premises by himself or those under whom he claims, he shall file with his plea, or at a subsequent time before the trial, if for good cause allowed by the court, a statement of his claim therefor in case judgment be rendered for the plaintiff. In such case the damages of the plaintiff and the allowance to the defendant for improvements shall be estimated, and the balance ascertained, and judgment therefor rendered as prescribed in the ninety first chapter." When we turn to the ninety first chapter we

find section second provides that in fixing and assessing the value of improvements the jury shall estimate against the defendant the annual value of such part of the premises, if any, as was improved and in a state fit and prepared for cultivation, at the time he took possession thereof, and shall credit him with the value of all the improvements made thereon ; but no charge shall be made against the tenant for the use of any improvements made upon the land by him, or for the use of any part of the land cleared by him. Now it is a maxim that equity follows the law, and it was doubtless upon this view that the Circuit Court adjusted the rights of the parties and decreed Ball to pay the value of the improvements erected by Fishack, less the annual rental value of the vacant lot while unimproved. In this we find no error, and are of opinion that the decree of the court below should be affirmed, with such slight modifications as I shall now proceed to indicate.

The plaintiff having framed his bill originally upon the theory that he was entitled to specific performance of a parol contract, by the terms of which the defendant was to give him a conveyance for the vacant lot, and he to surrender the note for the purchase-money, he can not complain if the court should grant him all the relief thus prayed for ; therefore, I think the court below, in giving Ball his period of redemption before the sale of the lot, should also have given him his option either to pay the sums decreed against him and retain the lot, or to make a deed for the lot to Fishack and deposit it with the special commissioners, and receive back his note for three hundred and forty nine dollars, and thus relieve himself from liability to pay any money except the costs of suit.

Furthermore, it is properly objected to the decree by the appellant in this Court that no provision is made, in case Ball elects to redeem the lot, for placing him in possession. The decree should therefore be so modified as to permit Ball, in case he elects to and does redeem the lot, to apply for a writ of possession on the foot of the decree, or that in such case of redemption, as aforesaid, the sheriff should place him in possession.

The decree of the court below is affirmed, and the cause

remanded, with instructions that it be proceeded in as indicated and directed in this opinion, and further in accordance with the principles of equity.

AFFIRMED AND·REMANDED.