JOHN A. BENTLEY, APPELLEE, v. GEORGE W. SPACE, APPELLANT.

FILED DECEMBER 9, 1916. No. 18942.

Specific Performance: MISLEADING STATEMENTS. A court of equity may refuse to decree specific performance of a contract for the sale of land at the instance of the vendor, where he has misled the vendee as to the quantity to be conveyed, even though he acted innocently in so doing.

APPEAL from the district court for Cheyenne county: HANSON M. GRIMES, JUDGE. *Reversed, with directions.*

*C. Petrus Peterson, R. W. Devoe* and *J. M. Swenson,* for appellant.

*W. P. Miles* and *J. L. McIntosh, contra.*

FAWCETT, J.

From a decree of the district court for Cheyenne county, awarding plaintiff a decree for the specific performance of a contract for the sale of land in that county, defendant appeals.

The written agreement entered into between the parties, dated October 23, 1913, recited the sale by plaintiff to defendant of the north half of section 7, township 15, range 48, west of the sixth P. M., in Cheyenne county, "containing 320 acres, more or less, according to the government survey thereof." The consideration expressed in the agreement was $7,360, payable $500 cash, $3,860 on or before March 1, 1914, remainder of $3,000 on or before five years, with interest at 6 per cent. per annum, to be secured by first mortgage on the land. The $500 was paid by defendant at the time of the execution of the agreement. When March 1, 1914, arrived, it was learned that the tract of land did not contain 320 acres, but was 24.2 acres short. Upon learning this fact, defendant refused to take the land, and this suit was instituted. The petition is in the usual form. The answer alleged that defendant purchased the land on the representation of plaintiff that it contained 320 acres; that he would not have purchased it, nor have entered into the contract, if he had known that it contained a less number of acres than 320; and by cross-petition defendant asked for a return of the $500 which he had paid, together with interest from the date of payment. The answer further alleged that plaintiff represented to him that the tract of land contained 320 acres, for which he agreed to pay $23 an acre; and that the consideration of $7,360 was ascertained by multiplying 320 (acres) by 23 (dollars an acre). In his answer to the cross-petition of defendant, plaintiff denied that he made any representations to defendant as to the acreage; and alleged that at the time he made the sale he was not aware that the half section involved was short; that the land was sold by him to defendant as a half section of 320 acres, more or less; that the tract was sold for the specific sum of $7,360; and set out other matters which need not be considered. The reply to this answer was a general denial.

The evidence shows without dispute that the gross sum of the consideration was ascertained in the manner alleged by defendant. Defendant testified in his own behalf that

on the day plaintiff showed him the land in controversy he first showed him two or more other tracts, one of which tracts contained 160 acres; that he told plaintiff "it wasn't enough, and he said he thought he could get me the 80 adjoining it, and I told him I didn't want less than 320 acres, because I had two sons and I wanted to give them a farm of 160 acres each;" that plaintiff then said he had 320 acres northeast of town, which he would sell at $23 an acre. He further testified that prior to reaching the land in controversy plaintiff stated to him "that there were 320 acres in it." Plaintiff took the stand on rebuttal, but made no attempt to deny this testimony given by defendant. It stands, therefore, established without dispute that plaintiff knew defendant was seeking to purchase a tract of land containing 320 acres, for the purpose of giving two sons a farm of 160 acres, each. It is conceded by the parties that neither of them knew at the time the agreement was entered into that they were dealing with a short half-section of land. The trial court found "that the consideration agreed upon, for said sale, was $23 an acre," and that both parties supposed that the tract contained approximately 320 acres, when in fact it contained only 295.8 acres. On these findings the court adjudged that defendant was not entitled to avoid the contract, but must take and pay for the 295.8 acres at the agreed price of $23 an acre; that after deducting the price of the 24.2 acres, at $23 an acre, defendant should specifically perform the contract for the reduced gross consideration within 60 days from the date of the decree, and refused defendant relief under his cross-petition.

We think the district court erred. The evidence of defendant shows that he would not have entered into the contract had he known that the tract contained only 295.8 acres. While it may be conceded that a court of equity will compel specific performance of a contract which the parties intended to make, but which, through their mutual mistake, is not the one actually made, it will not compel performance of a contract materially dif-

ferent from the one which they both intended to make. That would be to make a new contract for the parties, and one which one of them at least never intended to make. In other words, a court of equity will not grant its affirmative remedy to compel the defendant to perform a contract which he did not intend to make, or which he would not have entered into had its true effect been understood; nor will specific performance of a contract for the sale of land be decreed at the instance of the vendor, where he has misled the vendee as to the quantity to be conveyed, even though he acted innocently in so doing. Pomeroy, Specific Performance of Contracts (2d ed.) sec. 250; 2 Pomeroy, Equity Jurisprudence (3d ed.) sec. 860; 2 Story, Equity Jurisprudence (13th ed.) secs. 769, 770.

In 2 Warvelle, Vendors (2d ed.) sec. 749, it is held: "It is beyond dispute that a purchaser is entitled to all that he bargains for, and is under no obligation to accept a part or to accept compensation or abatement, hence, if he contracts for the purchase of land of defined area or specified quantity, he is under no obligation to complete the contract if the vendor is unable to convey all that the agreement calls for."

In *Allen v. Kirk*, 219 Pa. St. 574, it is said: "It is ungracious to ask that the appellees be compelled to take that which, under a further unchallenged finding of the court, they would not have agreed to take if they had known its real dimensions. * * * The learned judge below cited authorities to support his correct conclusion that the bill ought to be dismissed, but he needed none. The equities were all with the appellees. The appellant, who sought relief, came into court with none. He had innocently and unintentionally, as found by the court, misled the parties with whom he contracted, but out of their mistake, so induced, no contract arose which equity would enforce."

In 2 Warvelle, Vendors (2d ed.) sec. 749, it is said: "If the vendor cannot make out a title as to part of the subject-matter, or in case of a deficiency in the quantity of the

land, equity will not compel the vendee to perform the contract even in part."

In *Flynn v. Finch,* 137 Ia. 378, it is held: "Deceit in representing the area of land need not be shown to justify denial of specific performance of a contract to convey; innocent misrepresentation to a substantial extent, which induced the making of the contract, is sufficient to defeat such relief at the suit of the party making the representations. Evidence held to show misrepresentation."

In *Gurley v. Hiteshue,* 5 Gill (Md.) 217, it is said: "A court of equity, professing as it does to lend its aid exclusively to cases in which a claim can be conscientiously enforced, will never coerce the specific performance of a contract for a party who has not acted fairly, openly and without suppression of any important fact, or the expression of any falsehood. Whether with a fraudulent design or innocently, yet if a false impression has been conveyed and made the basis of the contract, this extraordinary jurisdiction of the court will not be exercised by coercing a specific performance."

Our own cases are in harmony with these authorities. *Stanton v. Driffkorn,* 83 Neb. 36, and other Nebraska cases therein cited.

While authorities may be found which seem to point the other way, we think the authorities cited clearly state the correct rule applicable to the facts in the case we are now considering. Defendant thought he was purchasing 320 acres of land. He was warranted in thinking so because the plaintiff stated that it contained that number of acres. He agreed to pay $23 an acre for that number of acres, and signed an agreement for the gross consideration, ascertained by multiplying the number of acres which the tract was represented to contain by the price per acre agreed upon. Upon learning that the tract contained many acres short of the number represented, he declined to proceed with the contract. He was justified in so doing, and, having paid $500 upon the contract in reliance upon the represen-

tations so made, he is entitled to have that money repaid to him.

It is claimed by plaintiff that after the parties had ascertained that the land was short they had a conversation in relation thereto, in which he first offered to allow defendant a credit of $200 if he would proceed with the contract, and then offered to throw off half of the acreage that was short, at the rate of $23 an acre; that in a subsequent conversation he told defendant that he would throw off the entire shortage in acreage. He did not testify that defendant accepted this offer. The fact that defendant did not at that time consent to take the land if the price of the 24.2 acres were deducted and the failure of the plaintiff to testify that he did so agree are shown by plaintiff's allegations in his answer to defendant's cross-petition, in which he alleges that the first time he became aware that defendant was dissatisfied with the deal was about March 4 or 5, when defendant told him that he did not know the land was short in acreage; that "plaintiff told defendant that he was selling the land to him, just as he bought it himself, and that he did not know the half-section was short, and said to defendant that under the conditions he was willing to make a reduction in the consideration for said land equal to one-half the short acreage, but that he thought the defendant ought also to stand for one-half the shortage, and that the defendant then told plaintiff that he would see him again with reference to it, and the defendant did come around to see the plaintiff about the shortage of acreage, and the plaintiff then said to the defendant that he would be willing to throw off an amount of the consideration for the purchase of said tract equal to the amount of said short acreage multiplied by the price per acre of said land, just the same as though there were 320 full acres in it, which would be about $560, and that the defendant then said he would be around again, and that plaintiff thought there would be no other complaint, and that the deal would be finished according to contract." It appears, therefore,

from plaintiff's own allegations that when he wired to his
vendor for a deed he did so without any agreement on the
part of defendant to accept it, and that he sent his wire
indulging in the mere "thought there would be no other
complaint, and that the deal would be finished according
to contract."

We are unable to discover any theory upon which plain-
tiff should be permitted to recover. The judgment of the
district court is reversed and the cause remanded, with
directions to dismiss plaintiff's suit for want of equity, and
to enter judgment in favor of defendant upon his cross-
petition, as prayed therein.

REVERSED.

MORRISSEY, C. J., and SEDGWICK and HAMER, JJ., dissent.